IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WEBLOYALTY.COM, INC., | : |
| Plaintiff | : C.A. No. 04-CV-90 |
| v. | : |
| CONSUMER INNOVATIONS, LLC, | : |
| Defendant. | : |

**DEFENDANT, CONSUMER INNOVATIONS, LLC'S,
PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN
By: Daniel Griffith, Esquire (#4209)
    Joseph Scott Shannon, Esquire (#3434)
1220 Market Street, Fifth Floor
P.O. Box 8888
Wilmington, DE 19801-8888
(302) 552-4300

Date: March 16, 2005

## PROPOSED FINDINGS OF FACT[1]

CIF-1. Webloyalty.Com, Inc. ("Webloyalty") offers, among other things, on-line membership clubs by way of a process known in the industry as post-transaction marketing and/or post-buy marketing. (See Joint Proposed Pre-Trial Order, III, ¶2).

CIF-2. Post-buy marketing is simply marketing other services after a transaction at a commerce-based web site. (Trial Transcript [*hereinafter* "TT"] at 47:11-13)

CIF-3. In November, 2002, Webloyalty began working with a partner company, Walter Drake, to promote Webloyalty's Reservation Rewards Program. (TT at 61:23 to 62:1)

CIF-4. Webloyalty's reservation Rewards Program is a membership program offering travel discounts to members. (TT at 44:8-21)

CIF-5. Beginning in November, 2002, when an on-line customer made a purchase from Walter Drake's web site, the customer would be directed to a Walter Drake "confirmation page" which would confirm the purchase. On the confirmation page was a "banner advertisement" on which the customer could click to be directed to a "sell page" offering membership in the Reservation Rewards Program. (TT at 45:3-16)

CIF-6. The Webloyalty sell page linked to the Walter Drake site between December 16, 2003 and January 16, 2004 is the subject of U.S. Copyright Registration No. TX 5842219, which is owned by Webloyalty. This copyright was registered on November 29, 2003 and has a date of first publication of September 15, 2003. (Joint Proposed Pre-Trial Order, III, ¶4.)

CIF-7. Consumer Innovations ("CI") at all relevant times marketed a program entitled "Traveler Innovations" which was a travel-related discount program. (TT at 120:24 to 121:3)

---

[1] For ease of reference, Consumer Innovations' proposed findings of fact are designated "CIF-1" and sequentially; and proposed conclusions of law are designated "CIL-1" and sequentially.

CIF-8. In approximately November, 2003, CI was approached by a broker, List Services, about a potential marketing opportunity with Walter Drake for post-transaction marketing of CI's Traveler Innovations Program. (TT at 125:2-6)

CIF-9. Specifically, Walter Drake decided to run a head-to-head test between Webloyalty's Reservation Rewards Program and CI's Traveler Innovations Program whereby customers making a Walter Drake purchase would be offered either membership in the Reservation Rewards Program or the Traveler Innovations Program on an alternating, at 50/50, basis. (TT at 211:15-20)

CIF-10. CI developed Sell Page for its Traveler Innovations Program linked to the Walter Drake site in December, 2003. (Joint Proposed Pre-Trial Order, III, ¶10.)

CIF-11. The Parties stipulated as to the "identical" nature of the challenged language. (TT at 49:23 to 50:20; 131:11 to 132:7).

CIF-12. Webloyalty follows a "good business practice" of viewing and making copies of competitors' sell pages, as well as joining competitors' marketing programs. (TT at 58:3 to 60:23).

**Copyright Infringement Claim for the Webloyalty Sell Page, Registration No. TX 5842219[2]**

CIF-13. The Webloyalty Sell Page at issue was registered on November 29, 2003 and has a date of first publication of September 15, 2003. (Joint Proposed Pre-Trial Order, III, ¶4.)

CIF-14. The Webloyalty Sell Page registered on November 29, 2003 contained language identical to certain language that had been copyrighted by Webloyalty in prior versions of the Reservation Rewards Sell Page. (TT at 110:3 to 112:8)

---

[2] The Court has concluded, as an apparent finding of fact, that there was "actual copying" of the Webloyalty Sell Page by CI. (TT: 216-1 to 217-7) The proposed Findings of Fact on the infringement of Webloyalty's Sell Page relates to the issues of willfulness and the damages to which Webloyalty is entitled.

CIF-15. The Webloyalty Sell Page also includes elements, such as photographs, taken from another web site. (TT at 77:24 to 78:1)

CIF-16. The CI Sell Page was live for a total of approximately thirty days, between January 15, 2004 and February 15, 2004. (See Joint Proposed Pre-Trial Order, III, ¶11.)

CIF-17. During the thirty-day period when the CI Sell Page was live and the 50/50 test was being performed by Walter Drake, Webloyalty experienced the expected fifty percent drop in volume of its customers. (TT at 211:11-20)

CIF-18. On January 16, 2004, the first full day that the CI Sell Page was live on-line, Don Gustafson of Webloyalty visited the site and made other Webloyalty employees aware of the similarity between the two Sell Pages. (TT at 106:18 to 107:1)

CIF-19. While Mr. Gustafson subsequently made additional purchases during the test period (including a purchase on January 28, 2004), no cease-and-desist letter or informal contact was made with CI to request that the CI Sell Page be removed until the filing of the subject lawsuit on February 9, 2004. (TT at 106:18 to 108:5; and 165:12-15)

CIF-20. According to CI representative, Matt Gordon, if a phone call had been received from Webloyalty complaining about the similarity between the language in the two Sell Pages during the thirty days that the CI Sell Page was live, CI would have discussed the issue with Webloyalty and tried to come to an amicable resolution. (TT at 165:1-11)

**Alleged Infringement of Webloyalty's Banner Advertisement**

CIF-21. The "confirmation page" upon which the banner advertisements were placed was owned and controlled by Walter Drake. (TT at 163:25 to 164:17)

CIF-22. Consumer Innovations had no ability to change the language in a banner advertisement on Walter Drake's confirmation page. (TT at 164:6-10)

CIF-23.     The language for the banner advertisement directing consumers to the CI Sell Page was developed and placed on the Walter Drake confirmation page by Walter Drake. (TT at 148:20-24; and 164:11-14)

CIF-24.     Walter Drake decided on the language, look, and feel and location of the banner advertisement on its confirmation page which would direct consumers to the CI Sell Page. (TT at 164:15-17)

CIF-25. The Webloyalty banner advertisement which is the subject of this litigation was not registered until February 17, 2004, when the banner advertisement for the CI program was no longer live. (Joint Final Pre-Trial Order, III, ¶12.) Webloyalty placed no copyright notice on the banner advertisement; the only copyright notice on the Walter Drake Conformation page was that of Walter Drake (DTX-38), through whom Consumer Innovations coordinated the wording, layout, look and feel of the banner. Therefore, there was no notice to CI that the Webloyalty banner advertisement on Walter Drake's confirmation page was subject to copyright protection at the relevant times. Ibid


## Allegations of Trade Dress Infringement Under the Lanham Act

CIF-26.     Webloyalty is a marketing company. (TT at 41:9-13)

CIF-27.     The text, graphics, and even the "look and feel" of Webloyalty's Sell Page are carefully selected and tested in order to increase the customer response rate to its Sell Page and to give Webloyalty a competitive advantage. (TT at 41:9 to 43:14; 45:1 to 46:3; 78:8-16; 90:4 to 91:3)

CIF-28.     Webloyalty's Sell Page comprises text describing its Reservation Rewards travel offer and photographs showing travel destinations and activities. (TT at 75:22 to 78:1)

CIF-29. At least two other post-transaction marketing companies use margin photographs and language that is similar, although not identical, to the language used on Webloyalty's Sell Page. (TT at 153:11 to 157:17)

CIF-30. At the time the complained-of acts occurred, Webloyalty's Sell Page had been in use for less than fifteen months. (TT at 73:13-15)

**Damages**

CIF-31. Webloyalty suffered no damage to its reputation nor client relations as a result of the conduct alleged against Consumer Innovations. (TT at 62:10 to 63:4).

CIF-32. Consumer impressions on Webloyalty's website from Walter Drake dropped 50% after the test was begun and was a result of the 50/50 test set up by Walter Drake. (TT at 211:11 to 212:15).

CIF-33. Webloyalty's damages calculation is not based upon Consumer Innovations' alleged infringement of either the Sell Page or the Banner, but rather because "During the test period, whatever volume was diverted from us, we would lose. However, once that test period ended, we would have full volume back." (TT, Isaacs, at 212:10-15).

CIF-34. Webloyalty's calculation of $24,546.06 in actual damages "represents what Webloyalty's profits would have been if there had been no test at all." (TT, Isaacs, 212:19 to 213:14, "This number, the 24-five, is the amount of money that we had foregone because of the test.").

CIF-35. Webloyalty offered no testimony that Consumer Innovations or the Walter Drake test impacted Webloyalty's relationships with its clients or consumers. (*I.e.*, TT at 214:17 to 215:4).

CIF-36.   Throughout 2004 and even after Consumer Innovations' alleged infringement, Webloyalty continued to increase the number of consumers enrolled in its Reservation Rewards program, and continued its relationship with Walter Drake. (TT at 214:1-16).

CIF-37.   Webloyalty offered no evidence to establish any damages resulting from Consumer Innovations' alleged infringement of either the Sell Page or the Banner. (*I.e.*, TT, *passim*).

## CI's PROPOSED CONCLUSIONS OF LAW

### Infringement of Webloyalty's Copyrighted Sell Page

CIL-1. Given the Court's finding of actual copying by CI of Webloyalty's Sell Page, (TT 216:1-3), Webloyalty may be entitled to an award of statutory damages plus attorney's fees.[3]

CIL-2. Webloyalty failed to establish any actual damages independent of the circumstances of the 50/50 test conducted by Walter Drake and resulting directly from Consumer Innovations' alleged copyright infringement.

CIL-3. Under 17 U.S.C. § 504(c)(1), Webloyalty "may elect . . . an award of statutory damages <u>for all infringements involved in the action, with respect to any one work</u> . . . in a sum of not less than $750 or more than $30,000 as the court considers just." (Emphasis added). As a matter of statutory law, Webloyalty's claims of infringement as to the Sell Page and Interim Sell Page both relate to Registration TX 5842219, being one cognizable count of infringement and one award of statutory damages. *See, e.g., MCA, Inc. v. Wilson*, 677 F.2d 180 (2nd Cir. 1981)

---

[3] While the law contemplates an election by the Plaintiff of actual damages (proved lost profits and Defendant's profits) or statutory damages, Webloyalty has not explicitly made an election at this juncture. However, given the *de minimus* actual damages (CI's gross sales were approximately $987 and its "profit" was a <u>loss</u> of $300), as Webloyalty calculated its lost profits at $25,000 (with no allowance for Walter Drake's diversion of fifty percent of its consumers to CI's Sell Page), it may be presumed that Webloyalty will elect statutory damages.

(statutory damages of $250 per performance of infringed work reduced to a single award of $250 because each performance was a single ongoing infringement of the copyrighted work).

CIL-4. The statutory damages must bear some relation to the actual damages suffered and the egregiousness of the conduct. RSO Records, Inc. v. Peri, 596 F.Supp. 849, 862 (S.D. N.Y. 1984) ("Undoubtedly assessed statutory damages should bear some relation to actual damages suffered," and citations following including "$40,000 in statutory damages because of defendant's willful and repeated infringements," and "finding willful infringement, doubled the amount of actual damages suffered by plaintiff in awarding statutory damages of $10,000", internal citations omitted); *see also, e.g.*, Walt Disney v. Video 47, 972 F. Supp. 595 (S.D. FL 1996) (statutory damages of $50,000 *per title*, totaling $800,000 plus attorney's fees, were awarded to an infringer who violated the Court's injunction and continued to rent counterfeit videotapes, even after litigation commenced); Playboy Enterprises v. Webb World, Inc., 991 F. Supp. 543 (N.D. Tex. 1997) (statutory damages of $1,000 per image for twenty-nine photographs, plus $20,000 for each of five images that were infringed *after the preliminary injunction issued*, resulted in a total award of $439,000 based upon the multiple acts of infringement).

CIL-5. Here, in contrast, Webloyalty acknowledged from the first day of Consumer Innovations' web page going "live" on the Walter Drake site that there were substantial similarities between it and Webloyalty's copyrighted Sell Page. Nevertheless, Webloyalty made no effort to contact CI and request removal of the offending Sell Page prior to the filing of the lawsuit. Immediately upon commencement of the lawsuit, CI made changes to its web page and within days and without the necessity of the Court's intervention to enter a preliminary injunction, Walter Drake removed CI's Sell Page as an option for its consumers. The testimony

from CI representatives made clear that its relationship with Walter Drake was its first foray into on-line post-transaction marketing. CI understood that the primary purpose of the Walter Drake test between Webloyalty and CI was to gauge the difference in customer complaints if CI required customers to enter a CVV #2 code (i.e., remind customers that their credit card was being charged) rather than the comparison of the parties' respective programs.

CIL-6. As offensive to the Court and the statutory scheme as actual copying may be, this remains a case with less than $1,000 in sales garnered by Consumer Innovations as a result of the infringement, a business loss to Consumer Innovations of some $300 and arguably only $25,000 in damages sustained by Plaintiff – which amount fails to take into account the 50% drop in business Webloyalty could expect from the circumstances of the Walter Drake test irrespective of any "infringement" by Consumer Innovations.

CIL-7. Factors to be considered by the Court in awarding statutory damages include "the difficulty or impossibility of proving actual damages, . . . the circumstances of the infringement, . . . and the efficacy of the damages as a deterrent to future copyright infringement." F.E.L. Publications, Ltd. v. Catholic Bishop of Chicago, 754 F.2d 216, 219 (7th Cir. 1985) (citing F.W. Woolworth Co. v. Contemporary Arts, Inc., 344 U.S. 228, 230-33 (1952)).

CIL-8. "What is just in the particular case, considering the nature of the copyright, the circumstances of the infringement and the like, . . . but with the express qualification that in every case the assessment must be within the prescribed [statutory maximum or minimum]. Within these limitations the court's discretion and sense of justice are controlling . . . ." Woolworth, 344 U.S. at 232.

CIL-9. Given (1) the limited period of time that the offending Sell Page was live; (2) the immediate removal of the Sell Page upon notice from Plaintiff; (3) that the circumstances of the

infringement claim arose from a test arranged and conducted by a third party, Walter Drake; (4) the small size and start-up status of Consumer Innovations; (5) Webloyalty's failure to offer any evidence showing losses resulting from the infringement as opposed to the circumstances of the test; (6) the *de minimus* monetary losses involved that are attributable to the test itself; and (7) that this litigation was neither predicated upon nor necessitated by any recalcitrance of Consumer Innovations to avoid infringing conduct, but rather was premised upon the approach taken by Webloyalty to seek and receive its pound of flesh, a modest statutory damages award is warranted, appropriate, and just within the parameters stated by 17 U.S.C. § 504(c)(1).

CIL-10.   With respect to Webloyalty's entitlement to counsel fees for the "copying of Webloyalty's Sell Page by CI", the United States Supreme Court endorsed an "even-handed" approach for such an award under 17 U.S.C. § 505. Fogerty v. Fantasy, Inc., 510 U.S. 517 (1994). As the Third Circuit Court of Appeals commented:

> (We) do not require bad faith (to support an award of fees),
> nor do we mandate an allowance of fees as a concomitant of
> prevailing in every case, but we do favor an even-handed
> approach. The District Court's discretion may be exercised
> within these boundaries. Factors which should play a part
> include frivolousness, motivation, objective unreasonableness
> (both in the factual and in the legal components of the case),
> and a need and particular circumstances to advance consider-
> ations of compensation and deterrents. We expressly do not
> limit the factors to those we have mentioned, realizing that
> others may present themselves in specific situations.

Lieb v. Topstone Industries, Inc., 788 F. 2d 151, 156 (3rd Cir. 1986). Applying the referenced factors to the claims in this matter, the *de minimis* damages and Webloyalty's attempt to inflate the damages numbers without taking into account the 50% drop they would experience in any event, makes their decision to pursue litigation prior to pursuing a "cease and desist" letter borderline "frivolous"; Webloyalty's motivation in bringing this action as evidenced by its

approach and evidence presented goes towards competitive advantage as opposed to merely protecting its copyright; Consumer Innovations' defenses were not objectively "unreasonable" under the circumstances given the legitimate concerns raised about the validity of the copyrights, the lack of any notice of registration of the banner advertisement, and the Lanham Act defenses (*see infra*) whereas, by contrast, Webloyalty's claims of multiple infringements of TX-5842219, statutory damages and attorneys' fees for the Banner, and Unfair Competition claims may be deemed objectively "unreasonable"; the relative size, resources and market share of the Parties, and sales generated do not support the need for substantial compensation; and by all indications this was an isolated incident on Consumer Innovations' part, thereby going far to remove the need for "deterrence" as a factor in determining an appropriate award of attorneys' fees.

CIL-11.  Among the factors to be considered in determining the amount of attorney's fees under 17 E.S.C. §505, the Court in Lieb stated:

> The relative complexity of the litigation...a sum greater than what the client has been charged may not be assessed, but the award need not be that large...the relative financial strength of the parties is a valid consideration...where bad faith is present that, too, may affect the size of the award.

*Id.*

CIL-12.  In the Second Circuit, "zealous litigation" of "issues suitable for judicial determination" will not support an award of attorney's fees. Roy Export Co. Establishment v. Columbia Broadcasting System, Inc., 503 F. Supp. 1137 (S.D. N.Y. 198), aff'd. 672 F.2d 1095 (2d Cir. 1982), cert. denied 459 U.S. 826 (1982), and circumstances such as a defendant being warned that its activities were infringing and being given an opportunity to cease and desist prior to the filing of a lawsuit are required to justify an award of counsel fees. Kroll-O'Gara Co. v. First Defense International, Inc., 54 U.S. P.Q. 2d 1511 (S.D. N.Y. 2000).

CIL-13.    In the Lieb case, the District Court found no infringement, but denied the prevailing Defendant's request for attorney's fees. The Third Circuit found that Plaintiff had "ample opportunity to justify the filing of a lawsuit that patently had no legal merit...thus, under ordinary circumstances, an award of some counsel fees to Defendants would be appropriate. However, the arguments before the District Court may suggest some other reason why an award of counsel fees is inappropriate..." 788 (F.2d at 156.) Upon considerations for remand, the Third Circuit held that the District Court "should then consider the relative simplicity of the defense, and whether the retention of out-of-town counsel with the accompanying increase expense was necessary. *The sum requested is large, and we note that it may be both disproportionate to the amount at stake and excessive in light of the Plaintiff's resources. We emphasize that the aims of the statute are compensation and deterrents where appropriate, but not ruination*". Id. (emphasis added).

CIL-14.    Here, armed with obviously favorable facts (i.e., the identical language in the respective Sell Pages) supporting Plaintiff's claim for copyright infringement, but almost no actual damages that could be attributed to the alleged infringement independent of the circumstances of the Walter Drake test, Webloyalty embarked upon a course of litigation conduct apparently designed to maximize its opportunity for the "ruination" of its competitor, Consumer Innovations. First, Webloyalty filed suit without any cease and desist letter or other effort to have CI remove the offending Sell Page. Next, Webloyalty adopted postures throughout the litigation that made any reasonable resolution a practical impossibility while exponentially increasing the amount of counsel fees for which it sought reimbursement from CI. In this straight-forward manner, Webloyalty consistently assigned multiple attorneys from two jurisdictions to prosecute the action while criticizing to the Court Consumer Innovations' failure

to exercise similar "diligence". Paradoxically, Webloyalty now argues that its expenditure of counsel fees was "necessary" given CI's failure to cry "Uncle" when faced with litigation and write a blank check to Webloyalty, notwithstanding the absence of any actual damages.

   CIL-15.  The Southern District of New York's reasoning in denying attorney's fees to a successful copyright infringement Plaintiff is not only particularly instructive and applicable to the facts here, but it is also poignant in light of the Third Circuit's decision in *Lieb v. Topstone Industries* calling for an "even-handed" approach to awarding counsel fees:

> In practice, counsel fees are awarded only where it appears that the Defendant has resisted a valid claim with a defense that is so lacking in merit as to present no arguable question of law or fact or where it appears that the defense was designed to annoy or harass the Plaintiff. . . . In the instant case, Plaintiff was seeking a large sum in damages, and although the issue of infringement was fairly clear, the question of damages was not. We do not think that the Defendant's decision to resist this claim can be deemed a mere ploy to annoy or harass the Plaintiff. Considering the sizable damages sought by Plaintiff in a case involving an inexpensive product, Defendant's decision to resist the claim, particularly on the issue of damages, was not without merit. Therefore, counsel fees will be denied.

Morser v. Bengor Products Co., Inc., 283 F. Supp. 926, 929 (S.D. N.Y. 1968). Like the *Morser* defendant, Consumer Innovations was confronted with a claim in which "the issue of infringement was fairly clear, [however] the question of damages was not." Like the *Morser* defendant, Consumer Innovations had to take into account the "the sizable damages sought by Plaintiff in a case involving an inexpensive product," and, like the *Morser* defendant, Consumer Innovations' "decision to resist the claim , particularly on the issue of damages, was not without merit."

   CIL-16.  As reiterated by every Court to have considered the issue, an award of statutory damages and attorneys' fees under the Copyright Act must be "reasonable under the

circumstances," e.g., <u>Lieb v. Topstone Industries, Inc.</u>, <u>supra</u>., and the circumstances in this case must include consideration of Webloyalty's decision to forego a "cease and desist" letter in favor of litigation involving multiple counsel in two states and ratcheting up its attorneys' fees in an attempt to leverage a settlement on unilaterally favorable terms. It must also take into account Consumer Innovations' good faith assertions of available defenses and recognizing the realities confronting it by withdrawing those defenses, where and when appropriate, upon further development of the facts without requiring the Court to issue rulings, and including Consumer Innovations stipulations to multiple facts and efforts to stipulate to further facts which were rejected by Webloyalty in favor of Plaintiff proceeding at trial to put forward evidence that was not challenged by Consumer Innovations.

**Absence of Damages for Banner Advertisement**

CIL-17.   Concerning Webloyalty's banner advertisement infringement claim, while 17 U.S. §412(b) contemplates statutory damages for a registration that occurs within three months of the first publication, House Report 94-1476 specifies the subsection (b) "exception is needed to take care of newsworthy or sudden popular works which may be infringed almost as soon as they are published, before the copyright owner has had a reasonable opportunity to register his claim". 17 U.S.C. §412 History.

CIL-18.   "Courts have consistently refused to award statutory damages or attorney's fees when the infringement commences before the work is registered". <u>Schiffer Publishing, Ltd. v. Chronicle Books, LLC</u>, 2005 U.S. Dist. LEXIS 416, Schiller, J., *Mem. & Order* (E.D. Pa., Jan. 11, 2005); see also <u>Evans Newton, Inc. v. Chicago Systems Software</u>, 793 F. 2d 889 (7th Cir. 1986) cert. den'd. 479 U.S. 949 (1986).

CIL-19. It is undisputed that Webloyalty's banner advertisement was not registered until February 17, 2004, <u>after</u> the banner advertisement linked to the CI Sell Page was taken down, and after the *Complaint* was filed. Even if CI created the banner advertisement (which it did not) and placed it upon the Walter Drake confirmation page (which it did not) or had the ability to remove it (which it did not), Webloyalty's banner advertisement was not registered while the CI banner advertisement was active, and Webloyalty's purported right to statutory damages or attorney's fees relating to the banner advertisement is not recognized in the circumstances presented by the claims in this matter. <u>E.g.</u>, <u>Newton, Inc. v. Chicago Systems Software</u>, <u>Schiffer Publishing</u>, <u>supra</u>.

CIL-20. 17 U.S.C. § 504(c)(2) provides that where the "infringer was not aware and had no reason to believe that his . . . acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200."

CIL-21. As a matter of law, the Banner Advertisement being on Walter Drake's website, with no copyright or other notice of ownership by anyone other than Walter Drake who placed Consumer Innovations' banner on its confirmation page, and the Banner Advertisement not even being registered by Webloyalty until after the *Complaint* was filed and Consumer Innovations' sell page removed, any finding of infringement by Consumer Innovations of Webloyalty's Banner Advertisement copyright must be deemed innocent and unknowing, and if entitled to <u>any</u> award of statutory damages – Webloyalty having offered no evidence of damages arising from Consumer Innovations' alleged infringement of the Banner as opposed to the circumstances of the test – the statutory minimum of $200.00 is proposed as just and appropriate under the circumstances.

**Willful Trade Dress Infringement/Lanham Act**

CIL-22.   Trade dress protection extends only to incidental, arbitrary, or ornamental product features that identify the product's source. To establish infringement of its registered trade dress, a Plaintiff must prove that: (1) the allegedly infringing feature is non-functional; (2) the feature is distinctive, either by being inherently distinctive or through acquired secondary meaning; and (3) consumers are likely to confuse the source of the Plaintiff's product with that of the Defendant's source. Shire US, Inc. v. Barr Laboratories, Inc., 329 F.3d 348, 353 (3rd Cir. 2003) citing Wal-Mart Stores, Inc. v. Samara Bros., Inc., 529 U.S. 205, 210-211, 120 S.Ct. 1339, 1343 (2000).

CIL-23.   Plaintiff bears the burden of proving non-functionality. Shire US, Inc. v. Barr Laboratories, Inc., 329 F.3d at 354, n. 13.

CIL-24.   Webloyalty failed to prove the look and feel of its Sell Page as *non-functional*. To the contrary, the undisputed testimony establishes that Webloyalty's Sell Page is functional, since virtually every aspect of the Sell Page is directed toward increasing the marketing efficiency of the page by increasing the customer response rate, (TT at 41:9 to 43:14; 45:1 to 46:3; 78:8-16; 90:4 to 91:3), the very definition of "functionality."

CIL-25.   The proper test for determining whether a design is inherently distinctive involves consideration of such factors as whether the design is (i)"'common' basic shape or design"; (ii) "unique or unusual in a particular field"; (iii) "a mere refinement of a commonly-adopted and well-known form of ornamentation for a particular class of goods viewed by the public as dress or ornamentation for the goods"; or (iv) "capable of creating a commercial impression distinct from the accompanying works". Seabrook Foods, Inc. v. Bar-Well Foods, Ltd., 568 F.2d 1342, 1344, 196 U.S.P.Q. 289, 291 (C.C.P.A. 1977); see also Yankee Candle Co.

v. Bridgewater Candle Co., 259 F. 3d 25 (1st Cir. 2001)(trade dress for common elements of candle labels was non-distinctive product packaging); Tone Brothers, Inc. v. Sysco Corp., 28 F. 3d 1192, 1205 (Fed. Cir. 1994).

CIL-26. Webloyalty failed, as a matter of law, to establish either a separate count of copyright infringement as to the Interim Sell Page; to establish a compensable count of copyright infringement as to the Banner Advertisement; or to establish any cognizable Lanham Act violation against Consumer Innovations and is entitled to no award of damages nor consideration for attorneys' fees and costs for those claims.

> Respectfully submitted,
>
> MARSHALL, DENNEHEY, WARNER,
> COLEMAN & GOGGIN
>
> _____
> BY: DANIEL GRIFFITH, ESQUIRE
>    JOSEPH S. SHANNON, ESQUIRE
>    1220 North Market Street, 5th Floor
>    P.O. Box 8888
>    Wilmington, DE 19899 – 8888
>    Tel.: 302.552.4317
>    Fax.: 302.651.7905
>    e-mail: sshannon@mdwcg.com

Dated: March 16, 2005                    *Counsel for Consumer Innovations*

## CERTIFICATE OF SERVICE

I, **DANIEL A. GRIFFITH**, hereby certify that on this __16th__ day of __March__, 2005, caused copies of the foregoing **Defendant, Consumer Innovations, LLC's Proposed Findings of Fact and Conclusions of Law** to be served on counsel for the parties at the following address:

Jack B. Blumenfeld, Esquire
Roger D. Smith
Morris, Nichols, Arsht & Tunnel
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
  *via Electronic Filing Service*

Steve Lieberman, Esquire
Rothwell, Figg, Ernst & Manbeck
1425 K Street, NW
Suite 800
Washington, DC 20004
  *via Federal Express*

The Honorable Kent Jordan
U.S. District Court for the District of Delaware
844 North King Street
Lock Box 10
Wilmington, DE 19801
  *via Hand Delivery*

MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN

BY: DANIEL GRIFFITH, ESQUIRE
    JOSEPH S. SHANNON, ESQUIRE
    1220 North Market Street, 5th Floor
    P.O. Box 8888
    Wilmington, DE 19899 – 8888
    Tel.: 302.552.4317
    Fax.: 302.651.7905
    e-mail: sshannon@mdwcg.com

*Counsel for Consumer Innovations*
