# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WEBLOYALTY.COM, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-90-KAJ |
| | ) | |
| CONSUMER INNOVATIONS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**REPLY OF WEBLOYALTY.COM, INC. IN SUPPORT OF
ITS APPLICATION FOR ATTORNEYS' FEES AND WEBLOYALTY'S
MOTION TO STRIKE THE EXPERT REPORT OF ANDRÉ JARDINI**

Pursuant to this Court's March 2, 2005 Order (D.I. 131), Webloyalty.com, Inc. ("Webloyalty") hereby submits its reply in further support of its application for attorneys' fees. Webloyalty also moves to strike the Expert Report of André Jardini submitted by Defendant Consumer Innovations, LLC ("CI") on the following grounds: (a) Mr. Jardini's declaration is inadmissible under Federal Rule of Evidence 702; (b) Mr. Jardini's declaration does not meet the requirements for the disclosure of expert testimony under Fed. R. Civ. P. 26(a)(2); and (c) CI breached the Protective Order (D.I. 85) in this case by providing Mr. Jardini with confidential information filed under seal.

**I.**

**CI'S OPPOSITION MISREPRESENTS THE FACTS**

CI argues that Webloyalty is somehow at fault for taking this case to trial. CI does that by misrepresenting the facts.

1

### A. CI Never Offered To Stipulate To Copying And Willfulness

In its opposition, CI represents to the Court:

- Webloyalty "refused Consumer Innovations' pre-trial offer to stipulate to [copying] as well as the issue of willfulness, preferring instead to put those issues before the Court in the context of a trial." Opposition at 3.

- "Webloyalty refused to enter into a stipulation of fact prior to trial addressing both 'actual copying' and wilfulness." Opposition at 7.

The plain import of CI's representations to the Court is that CI offered to stipulate to actual copying and to willfulness. This is simply not what happened.

On February 18, 2005 - - the last business day before trial - - Daniel Griffith, counsel for CI, sent an e-mail to Webloyalty with a proposal that the parties enter into the following stipulation:

"(1) That our demand for jury trial be withdrawn and the case tried to Judge Jordan;

(2) That Consumer Innovations stipulate to copying the Webloyalty sell page which is the subject of this litigation;

(3) That any infringement of either the sell page or banner advertisement was "non-willful" (which would preserve plaintiff's right to recover counsel fees and statutory damages, but also maximize the recoverability of the judgment);

(4) The legal issue identified in Judge Jordan's Memorandum Opinion (i.e., the protectibility of (the) copyrighted material") would remain in the case as well as plaintiff's claims for infringement of the banner advertisement and unfair competition/trade dress."

Within an hour, Webloyalty's counsel, Steven Lieberman, responded:

We'll agree to 1 and 2 provided that CI tell the Court that it will pay the jury costs if the jury cannot be notified in time not to show up. We will not agree to 3.

2

> I'm not quite sure what 4 means, but if all it means is that the issues not conceded are left to be tried, that's fine.

Exhibit B to Fourth Declaration of Steven Lieberman ("Fourth Lieberman Decl.").

CI then refused to stipulate to copying absent Webloyalty's agreement to stipulate that CI's copying was not willful. Fourth Lieberman Decl. at ¶2. Given the facts of this case, Webloyalty could not - - and would not - - enter into a stipulation that copying was not willful.

Thus, contrary to its representation to the Court, CI did not offer to stipulate to CI's copying and willfulness. Rather, CI offered to stipulate to copying -- to which Webloyalty agreed -- and to stipulate that its infringement was "non-willful." CI has simply misrepresented the facts to the Court.

Moreover, the timing of CI's <u>contingent</u> offer to stipulate to copying was on the last business day before trial -- when Webloyalty had already completed virtually all of its trial preparation. Given the facts of this case, CI should have conceded this issue at the beginning of the case, not the day before trial.

### B.   CI's Counsel Elicited False Testimony From CI's Witnesses

Presumably, CI's counsel offered to stipulate to copying on February 18 because he knew that CI had in fact copied the Webloyalty Sell Page. But when Webloyalty declined to stipulate that CI's copying was "non-willful," and the case proceeded to trial, CI's counsel then used leading questions in an effort affirmatively to elicit testimony from Mr. Gordon and Mr. Edwards that he knew or reasonably should have known was false. <u>See, e.g.</u>, Tr. at 162:6-12.

> [Q:]   I want to ask you some questions about the development of the Travel Innovations Sell Page, that was going to be linked to the Walter Drake site. You answered a number of questions from Mr. Lieberman about how that was created,

3

> for lack of a better word, was drafted by you. If I understand your testimony, although you reviewed the Webloyalty Sell Page for reservation regards [SIC], you did not copy it.

See also, Tr. at 163-164; 193:18-21.

Counsel for CI not only knew or should have known that he was allowing Mr. Gordon and Mr. Edwards to testify falsely, but as the quote above demonstrates, he asked leading questions designed to elicit false testimony. This provides an additional basis for the award of attorneys' fees.

### C. CI Was Aware Before Trial That Webloyalty Had Elected Attorneys' Fees

CI also misrepresents to the Court that Webloyalty

> refused to make an election as to either actual or statutory damages until its recent post-trial submission, requiring Consumer Innovations to anticipate, research, prepare for and argue both actual and statutory damages in its proposed findings of fact and conclusions of law.

Opposition at 4. This representation is also incorrect.

Webloyalty's Proposed Special Verdict Form, filed with the Court and served on CI on January 27, 2005 (D.I. 105) made absolutely clear that Webloyalty had elected statutory damages. At the February 1, 2005 pre-trial conference, counsel for CI stipulated to Webloyalty's Proposed Special Verdict Form. February 1, 2005 Tr. at 14:14-15:5 (D.I. 111). Counsel for Webloyalty repeated this election during opening statements. Tr. 23:1-4.

CI's counsel knew that Webloyalty had made such an election, a fact that is evidenced by his response to a question posed by the Court during opening argument.

> The Court : "... What is your understanding of what the plaintiff is asking for in the way of damages and remedy?"
>
> Mr. Griffith: "My understanding, Your Honor is that plaintiffs intend to select as opposed to actual damages, statutory damages and attorneys' fees ..."

4


Tr. 32:1-6.

CI's counsel plainly knew that Webloyalty had elected statutory damages prior to the date Webloyalty filed its post trial submission. There simply is no basis (and no excuse) for CI's statement that, prior to the filing of Webloyalty's post-trial submission, it did not know that Webloyalty had elected statutory damages.

## II.

## CI MISSTATES THE LAW

### A. Both The Statute And Case Law Support An Award Of Statutory Damages If The Copyright Is Registered Within Three Months Of Publication

17 U.S.C. §412(2) provides that statutory damages are available for "infringement of copyright commenced after first publication of the work and before the effective date of registration" so long as "such registration is made within three months after first publication of the work." 17 U.S.C. § 412(2). In its opposition, CI states:

> precedent and authority are crystal clear that "courts have consistently refused to award statutory damages or attorneys' fees when infringement commences before work is registered" (citations omitted).

As is clear from the legislative history and case law, CI has misstated the law. House Report 94-1476 provides:

> as an exception, however, the clause provides a grace period of three months after publication during which registration can be made without a loss of remedies; full remedies could be recovered for any infringement made before that period has ended. This exception is needed to take care of newsworthy or suddenly popular works which may be infringed almost as soon as they are published, before the copyright owner has had a reasonable opportunity to register this claim.

5

House Report 94-1476 (emphasis added). See <u>ABC, Inc. v. Primetime 24</u>, 2000 U.S. App. LEXIS 27885 (4th Cir. 2000) (unpublished) (holding that § 412(2) remedies are available when infringement occurred prior to registration and the work was registered within three months of publication).

Moreover, the cases cited by CI are wholly irrelevant. In <u>Schiffer Publishing, Ltd. v. Chronicle Books L.L.C.</u>, 2005 U.S. Dist. LEXIS 416 (E.D. Pa. 2005), the work was first published more than a year before the application for a copyright registration was made. In <u>Evans Newton, Inc. v. Chicago Systems Software</u>, 793 F.2d 889 (7th Cir. 1986) <u>cert. denied</u>, 479 U.S. 949 (1986), the copyright application <u>had no date of publication</u>. In both cases, therefore, registration occurred more than three months after first publication and Section 412(1) was inapplicable.

**B.     Webloyalty's Claim For Damages On The Interim Sell Page Was Not An Incorrect Legal Position**

CI's argument that Webloyalty's claim for damages on the Interim Sell Page was an "incorrect legal position" is another misstatement of law. Webloyalty is entitled to damages for copyright infringement on either the Sell Page or the Interim Sell Page. That Webloyalty pled both does not mean it expected to collect separate statutory damages for each violation. Rather, Webloyalty was pleading in the alternative, a procedure both acceptable and necessary protect its intellectual property rights.

## III.

## <u>THE EXPERT REPORT OF ANDRÉ JARDINI SHOULD BE STRICKEN</u>

### A.   <u>Mr. Jardini's Declaration Should Be Stricken Because It Does Not Meet The Requirements Of Federal Rule Of Evidence 702</u>

Federal Rule of Evidence 702 obligates judges to ensure that any scientific testimony or evidence admitted is relevant and reliable. <u>See</u> <u>Daubert v. Merrell Dow Pharms., Inc.</u>, 509 U.S. 579, 589 (1993). The Rule provides that "if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise." Fed. R. Civ. P. 702 (2003). The party offering the expert has the burden of proving admissibility. <u>Daubert</u>, 509 at 592 n.10. The subject of an expert's testimony must be grounded in the methods and procedures of science and based on more than a subjective belief or speculation. <u>Id.</u> at 589-590. Further, Federal Rule of Civil Procedure 702 requires that expert testimony assist the trier of fact, in other words, it must "fit" the issues in the case by having a "valid scientific connection to the pertinent inquiry." <u>Id.</u> at 591-92.

<u>Chase Manhattan Mortgage Corp., et al. v. Advanta Corp., et al.</u>, 2004 U.S. Dist. LEXIS 3933, at *32, C.A. No. 01-507 (KAJ) (D. Del. March 4, 2004).

A party can only elicit expert testimony from someone who has specialized knowledge or training sufficient to qualify him or her to opine on an issue within their field of expertise, and the expert's opinion must be confined to that field. <u>See</u> <u>Redman v. John D. Brush & Co.</u>, 111 F.3d 1174, 1179 (4th Cir. 1997) (metallurgist not qualified to testify about industry standards for safes); <u>Barrett v. Atl. Richfield Co.</u>, 95 F.3d 375, 382 (5th Cir. 1996) (expert not qualified to testify about correlation of chemical effects on rats and on humans).

<u>Oxford Gene Technology Ltd. v. Mergen Ltd., et al.</u>, 345 F. Supp.2d 431 (D. Del. 2004).

Fed. R. Evid. 702 requires that in order to be admissible, expert testimony must: (1) be "based upon sufficient facts or data (2) the testimony [must be] the product of reliable principles

7

and methods, and (3) the witness [must have] applied the principles and methods reliably to the facts of the case." Mr. Jardini has wholly failed to meet the standards set out in Rule 702.

For example, Mr. Jardini states that the average rates charged by RFEM and MNAT are "unreasonably high," and proposes reducing those rates by 40%. Jardini Decl. at 12-13. Mr. Jardini does not indicate how he reaches this conclusion aside from relying on his "experience." He provides no information on the fees charged by attorneys in Washington, D.C. or Wilmington, Delaware. He provides no information on what firms charge for intellectual property work. (There is also no evidence that Mr. Jardini has specialized knowledge of the practice of law in the area of intellectual property or that in arriving at his conclusions, he considered any information specific to intellectual property.) Mr. Jardini does not cite to any surveys, studies or reports regarding fees charged by other firms for intellectual property litigation. Mr. Jardini identifies no scientific method employed to reach his conclusions. In essence, Mr. Jardini gives testimony based on his subjective belief. Mr. Jardini's approach thus fails all three of the Rule 702 requirements.[1]

Nor does Mr. Jardini's Declaration satisfy Rule 702 as to any of the other matters on which he opines. For example, Mr. Jardini argues that the case was "significantly overstaffed" and determines that Webloyalty's legal fees were excessive. Mr. Jardini could not have garnered sufficient facts regarding this litigation from the materials he reviewed to apply any fee data to this litigation. Mr. Jardini did not review the docket sheet in this case. He did not review the trial

---

[1]   In determining "whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact," the court must assess whether the methodology underlying the testimony is scientifically valid and whether it can properly be applied to the facts in issue. [Daubert] at 592-93. As part of that inquiry, the court "must examine the expert's conclusions in order to determine whether they could reliably follow from the facts known to the expert and the methodology used." Heller v. Shaw Indus., Inc., 167 F.3d 146, 153 (3d Cir. 1999).

transcript. He did not review the motion to dismiss, or the depositions, or the summary judgment papers. Indeed, he did not review any documents other than the bills and the post-trial filings. Jardini Decl. ¶¶20-22.

Thus, Mr. Jardini's conclusion regarding "excessive billing" is not "based upon sufficient facts or data" and, regardless of what "principles and methods" he used, he certainly has not "applied the principles and methods reliably to the facts of the case." We know that, because we know from all the things that Mr. Jardini did not review, that he knows nothing about the facts of the case.

Mr. Jardini's opinion is, therefore, based on subjective belief or speculation rather than being grounded in methods and procedures of science. His declaration is not admissible under Federal Rule of Evidence 702. Accordingly, Mr. Jardini's declaration should be stricken in its entirety.

**B.     Mr. Jardini's Declaration Should Also Be Stricken Because It Does Not Comport With Fed. R. Civ. P. 26(2)(B)**

Fed. R. Civ. P. 26(2)(B) requires in part that an expert witness disclose his or her compensation. Mr. Jardini fails to comply with this requirement. The issue of Mr. Jardini's compensation is especially relevant in this case because he is opining on attorneys' fees. For example, it would be highly relevant to Mr. Jardini's statement that an acceptable average billing rate is $200/hour (Decl. at ¶58) if his rate were significantly higher.

Mr. Jardini's declaration should be stricken for failure to comply with the Federal Rules of Civil Procedure.

### C. Mr. Jardini's Expert Report Should Be Stricken As A Result Of CI's Violation Of The Protective Order

The non-public and confidential descriptions of the work done by Webloyalty's lawyers in this litigation (Lieberman Decl. Exh. B and Blumenfeld Decl. Exh. A) were designated as confidential and filed under seal. The Protective Order entered by the Court in this case provides a procedure for disclosure of confidential material to experts (D.I. 85 at 4.b.) (Fourth Lieberman Decl. Ex. C). That procedure includes disclosure of the identity of the expert, and his or her CV, as well as an undertaking to abide by the Protective Order. Under the Order, "[n]o CONFIDENTIAL INFORMATION shall be disclosed to such expert or consultant" until after that has been done, and five days have passed.

CI simply ignored the terms of the Protective Order with respect to Mr. Jardini. (This is, of course, not the first time that CI has ignored this Court's Orders.) Without even disclosing Mr. Jardini to Webloyalty, or obtaining an undertaking from him, CI's counsel cavalierly gave him the documents that had been designated as confidential. There is no question that the disclosure to Mr. Jardini violated the Protective Order. Because Mr. Jardini's report was based on information to which he had no right to access and which he obtained only by violation of a Court Order, it should be stricken.[2]

\* \* \*

For all of the reasons cited above, Webloyalty respectfully requests the Court to strike Mr. Jardini's Declaration.

---

[2] CI did not have Mr. Jardini sign the Protective Order Undertaking until after the violation had been brought to its attention.

10

        MORRIS, NICHOLS, ARSHT & TUNNELL

        /s/ Jack B. Blumenfeld
        Jack B. Blumenfeld (#1014)
        Rodger D. Smith II (#3778)
        1201 North Market Street
        P.O. Box 1347
        Wilmington, DE  19899-1347
        (302) 658-9200
        *Attorneys for*
*Of Counsel:*        *Plaintiff Webloyalty.com, Inc.*

Steven Lieberman
Elizabeth A. Leff
Anne M. Sterba
ROTHWELL, FIGG, ERNST & MANBECK, P.C.
1425 K St., N.W., Suite 800
Washington, D.C.  20005
(202) 783-6040

April 1, 2005